IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,607

In the Matter of MATTHEW B. WORKS,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed November 17, 2017. Two-year suspension, stayed pending successful completion of a three-year period of probation.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and *Michael R. Serra*, Deputy Disciplinary Administrator, was on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Matthew B. Works*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Matthew B. Works, of Topeka, an attorney admitted to the practice of law in Kansas in 1982.

On August 14, 2015, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On September 28, 2015, the respondent filed a motion for additional time to file an answer and a motion to continue the hearing; both motions were granted by the hearing panel. An amended formal complaint was filed October 7, 2015. The respondent filed an answer on October 29, 2015, admitting all facts and rule violations. A proposed probation plan was filed on January 7, 2016. A Joint Stipulation was filed on February 16, 2017. A hearing was held on the complaint before a panel of the Kansas

1

Board for Discipline of Attorneys on February 22, 2017, where the respondent was personally present and represented by counsel. The hearing panel determined that respondent violated KRPC 1.2(c) (2017 Kan. S. Ct. R. 288) (scope of representation); 1.3 (2017 Kan. S. Ct. R. 290) (diligence); 1.4(a) (2017 Kan. S. Ct. R. 291) (communication); 1.16(d) (2017 Kan. S. Ct. R. 331) (termination of representation); and 3.2 (2017 Kan. S. Ct. R. 341) (expediting litigation).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"*Representation of Y.P.*

"12. On February 8, 2011, Y.P. filed a *pro se* notice of appeal and request for appointment of counsel. On April 26, 2011, the court appointed the respondent to represent Y.P. in the appeal. The respondent did not file a docketing statement as required by Rule 2.04 or take any other action. Because the appeal was not docketed, the case languished in the court system. Nearly 2 years later, on March 26, 2013, the court dismissed the case. Throughout that period of time, the respondent remained as counsel of record for Y.P.

"13. On January 18, 2013, Y.P. filed a complaint against the respondent. During the investigation, the respondent asserted that because the appeal lacked merit, he took no action to docket the appeal. The respondent also asserted that he informed Y.P. that her appeal had no merit. Despite the respondent's conclusion that the appeal lacked merit, he failed to [move] to dismiss or withdraw from the representation.

2

"14. In early 2012, J.R. faced multiple felony charges in two separate criminal cases in Shawnee County, Kansas. On March 29, 2012, the respondent entered his appearance on behalf of J.R. With J.R.'s permission, the respondent entered into plea negotiations, on behalf of J.R., in the two cases. The respondent informed J.R. that the maximum possible prison sentence he could serve would be 60 months. On August 22, 2012, J.R. entered the pleas as agreed.

"15. After the plea hearing, J.R. learned that he faced a substantially longer prison sentence. Additionally, J.R. believed that the judge may be biased against him based on a previous experience J.R.'s grandparents had with the judge. J.R. communicated his concern about the judge to the respondent. The respondent told J.R. that the alleged bias was not worth raising.

"16. The court scheduled sentencing for December 7, 2012. At sentencing, the judge ordered J.R. to serve a controlling sentence of 46 months in prison for each case. The judge further ordered the sentences to be served consecutively, for a total sentence of 92 months.

"17. J.R. instructed the respondent to file an appeal on his behalf. The respondent filed notices of appeal in each case on December 10, 2012. After filing the notices of appeal, the respondent failed to docket the appeal. Additionally, the respondent failed to withdraw from the representation.

"18. Following J.R.'s sentencing hearing, J.R. wrote many letters to the district court seeking information. The letters were forwarded to the respondent, as he remained as attorney of record. The respondent did not explain to J.R. the necessary next steps to perfect the appeal.

"19. Nothing happened on J.R.'s appeal for 2 years.

"20.    On September 15, 2014, J.R. completed a poverty affidavit, requesting appellate counsel. On September 25, 2014, the district court appointed appellate counsel for J.R.

"*Conclusions of Law*

"21.    Based upon the findings of fact and the joint stipulation entered by the parties, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 1.16, and KRPC 3.2, as detailed below.

"KRPC 1.2

"22.    A lawyer may limit the scope of the representation provided that the limitation is reasonable [and] the client gives written informed consent to the limitation. KRPC 1.2(c). In this case, the respondent violated KRPC 1.2(c) by limiting the scope of the representation to representing J.R. before the district court without first obtaining J.R.'s written consent to the limitation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.2(c).

"KRPC 1.3

"23.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent Y.P. and J.R. The court appointed the respondent to represent Y.P. in her appeal. After reviewing the matter, the respondent determined that the appeal had no merit. After reaching that conclusion, however, the respondent failed to take any action to dismiss the appeal. The respondent's failure to take action, caused the case to remain pending for 2 years.

"24.    The respondent also failed to diligently represent J.R. In that case, the respondent filed notices of appeal on behalf of J.R., however, he failed to docket the appeals or withdraw from the representation. The respondent's inaction led to a 2-year delay in J.R.'s appeal.

4

"25.     Because the respondent failed to represent his clients with diligence and promptness, the hearing panel concludes that the respondent violated KRPC 1.3 in representing Y.P. and J.R.

"KRPC 1.4

"26.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to respond to J.R.'s letters and keep J.R. informed about the status of the appeal following the filing of the notices of appeal. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.16

"27.     KRPC 1.16 governs a lawyer's responsibilities with regard to terminating the representation. Specifically, KRPC 1.16, provides in pertinent part, as follows:

'(a)     Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . .

(1)     the representation will result in violation of the rules of professional conduct or other law;

(2)     the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client;

(3)     the lawyer is discharged; or

5

(4)     the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent.

. . . .

'(d)     Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

"28.     After the respondent concluded that Y.P.'s appeal lacked merit, under KRPC 1.16(a)(1), he should have withdrawn from the representation. The hearing panel concludes that because the respondent failed to withdraw, he violated KRPC 1.16(a).

"29.     After J.R. was sentenced, the respondent filed notices of appeal in the two criminal cases. However, the respondent failed to inform J.R. that he needed to have appellate counsel appointed and that in order to have appellate counsel appointed, J.R. needed to complete a poverty affidavit. By failing to fully inform J.R. about the necessary steps to take, the respondent failed to adequately protect J.R.'s rights, in violation of KRPC 1.16(d). Accordingly, the hearing panel concludes that the respondent violated KRPC 1.16(d).

"KRPC 3.2

"30.     An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. The respondent caused unnecessary delay in Y.P.'s case and J.R.'s case by failing to take any action. As a direct result of the respondent's inaction, both appellate cases were delayed by 2 years. Accordingly, the hearing panel concludes that the respondent violated KRPC 3.2.

6

*"American Bar Association*

*Standards for Imposing Lawyer Sanctions*

"31.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"32.    *Duty Violated*. The respondent violated his duty to his clients to provide diligent representation and adequate communication. The respondent also violated his duty to the legal system to expedite litigation.

"33.    *Mental State*. The respondent negligently violated his duties.

"34.    *Injury*. As a result of the respondent's misconduct, the respondent caused actual and potential injury.

"35.    *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.    Prior Disciplinary Offenses. The respondent has been previously disciplined on five occasions.

1)    On November 23, 1993, in B5722, the disciplinary administrator informally admonished the respondent for violating MRPC 1.4(a) and MRPC 1.5(d). (At that time, the rules were known as the Model Rules of Professional Conduct.)

7

2) On September 22, 1998, in A7127, the disciplinary administrator informally admonished the respondent for having violated MRPC 1.4.

3) On April 7, 2000, in DA7301, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.3.

4) On April 19, 2002, the Kansas Supreme Court placed the respondent on supervised probation for a period of 18 months, for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 3.4. On December 4, 2003, the court discharged the respondent from probation.

5) On January 20, 2004, in DA8870, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.4 and KRPC 1.15.

b. Multiple Offenses. In this case, the respondent committed multiple rule violations. The respondent violated KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 1.16, and KRPC 3.2. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

c. Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1982. At the time of the misconduct, the respondent had been practicing law for more than 30 years.

"36. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a. Absence of a Dishonest or Selfish Motive. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

8

b.        Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct. The respondent suffers from major depressive disorder. Additionally, during the relevant time period, the respondent's house burned and his dogs perished in the fire. The respondent has struggled with repairing and rebuilding his home. It is clear that the respondent's depression and personal difficulties contributed to his misconduct.

c.        The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions. The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

d.        Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney. The respondent is an active and productive member of the bar of Topeka, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

e.        Mental Disability or Chemical Dependency Including Alcoholism or Drug Abuse When: (1) There Is Medical Evidence That the Respondent Is Affected by a Chemical Dependency or Mental Disability; (2) the Chemical Dependency or Mental Disability Caused the Misconduct; (3) the Respondent's Recovery from the Chemical Dependency or Mental Disability Is Demonstrated by a Meaningful and Sustained Period of Successful Rehabilitation; and (4) the Recovery Arrested the Misconduct and Recurrence of That Misconduct Is Unlikely. The respondent suffers from major depressive disorder. From the evidence presented, it is clear that the respondent's depression

contributed to the misconduct. The respondent has been in treatment for his depression for some time. The respondent has demonstrated a meaningful and sustained period of successful rehabilitation. Finally, it appears that the respondent's treatment for his depression has arrested the misconduct and recurrence of the misconduct is unlikely, provided the respondent remains compliant with this treatment plan.

      f.      <u>Remorse</u>. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

      g.      <u>Remoteness of Prior Offenses</u>. The discipline imposed in 1993, 1998, 2000, 2002, and 2004 is remote in time to the misconduct in this case.

"37.      In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42      Suspension is generally appropriate when . . . (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.43      Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

   . . . .

'4.63      Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.'

"38.    The disciplinary administrator recommended that the respondent be placed on probation subject to the terms and conditions of the proposed plan, with an underlying period of suspension of 18 months to 2 years. The respondent requested that he be allowed to continue to practice law subject to the terms and conditions in the proposed plan of probation. The respondent acknowledged that in order to be granted probation, an underlying suspension must be included. The respondent did not make a recommendation as to the length of the underlying suspension.

"39.    When a respondent requests probation, the hearing panel is required to consider Kan. Sup. Ct. R. 211(g)(3), which provides:

'(3)    The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)    the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii)    the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii)    the misconduct can be corrected by probation; and

(iv)    placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"40.    The respondent developed a workable, substantial, and detailed plan of probation. The respondent provided a copy of the proposed plan of probation to the

11

disciplinary administrator and each member of the hearing panel at least 14 days prior to the hearing on the formal complaint. The respondent put the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan. The misconduct, in this case, can be corrected by probation. Thus, the respondent has established each of the first three requirements in order for the hearing panel to recommend that he be placed on probation.

"41.     The final factor, whether placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas requires a close look at the respondent, his misconduct, and his past. While the respondent's extensive disciplinary history and the serious nature of the misconduct in this case support a period of suspension from the practice of law, the hearing panel is impressed with the progress that the respondent has made to date. He has regularly met with his KALAP monitor, the KALAP staff, his psychiatrist, and his psychologist. The written reports from these treatment providers all support the respondent's continued practice subject to the terms and conditions in the proposed plan of probation.

"42.     The respondent has the support of his treatment providers and his peers, including his KALAP monitor and practice supervisor. With this support in place, the hearing panel concludes that placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas. According to his peers, the respondent does good work for his clients and is a valued member of the bar of Topeka, Kansas. As such, the hearing panel recommends that the respondent be placed on probation. Thus, based on the findings of fact, conclusions of law, and ABA standards, the hearing panel recommends that the respondent be suspended from the practice of law for a period of 2 years and that the imposition of the suspension be suspended and the respondent be placed on probation for a period of 3 years, subject to the following terms and conditions:

    a.     *Inventory of Cases and Clients.* The respondent shall maintain a written inventory of all engagements by client's name. The respondent shall update the inventory on a daily basis. The inventory shall include

12

the client's name, the client's contact information, the client's goal, the tasks that remain to be completed, all pending deadlines, and the forum (if any) in which the matter is pending.

b.       *Practice Supervision*. Jason Hoffman shall serve as the respondent's practice supervisor. The practice supervisor shall be acting as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. The practice supervisor shall be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the course of supervising the respondent's probation. The respondent shall allow the practice supervisor access to his client files, calendar, and trust account records. The respondent shall comply with any requests made by the practice supervisor.

c.       *Audits*. Within 30 days of the date of this report, the practice supervisor shall conduct an initial audit of the respondent's files. Thereafter, every 6 months, the practice supervisor shall conduct additional audits. If the practice supervisor discovers any violations of the Kansas Rules of Professional Conduct, the practice supervisor shall include such information in the audit reports. The practice supervisor shall provide the disciplinary administrator and the respondent with a copy of each audit report. The respondent shall follow all recommendations and correct all deficiencies noted in the practice supervisor's periodic audit reports.

d.       *Meetings.* During the first 18 months of probation, the respondent shall meet with the practice supervisor in person on a weekly basis. For the final 18 months of probation, the respondent shall meet with the practice supervisor in person on a monthly basis, unless in the practice supervisor's opinion, the meetings should occur more frequently. The respondent shall provide the practice supervisor with an updated copy of the written inventory during each meeting. During the meetings, the respondent shall discuss a plan of action on each case with the

13

practice supervisor. The respondent and the practice supervisor shall review the respondent's schedule for the upcoming week (or later, month) to determine that notices have been sent to all clients and other appropriate parties, that the respondent is adequately prepared, that the respondent is in compliance with all requirements of probation, and that all files have been properly updated.

e.     *Monthly Reports.* The practice supervisor shall provide monthly reports to the disciplinary administrator regarding the respondent's compliance with the terms and conditions of probation.

f.     *Office Procedures.* The respondent shall work with the practice supervisor to develop written office procedures. The written office procedures shall cover billing, calendaring, and communication. The respondent shall also work with the practice supervisor to develop form letters to send to clients for regular occurring events. If, at any time during the period of probation, the practice supervisor recommends changes or additions to the written office procedures or form letters, the respondent shall immediately implement the changes. The practice supervisor shall detail the changes or additions recommended to the respondent in his monthly report to the disciplinary administrator. The respondent shall follow the written office procedures and utilize the form letters.

g.     *Office Assistance.* The hearing panel recommends that the respondent employ office staff, on at least a part-time basis.

h.     *Client Communication.* The respondent shall respond to telephone calls, email messages, and letters within 2 business days of receipt of the client contact. The respondent shall provide a copy of documents to clients within 5 business days of receipt. On a quarterly basis, the respondent shall provide each client a detailed status report of the representation.

i.      *Psychological Treatment*. The respondent shall continue his treatment for depression throughout the period of supervised probation, unless his treatment providers determine that continued treatment is no longer necessary. The respondent shall follow the treatment providers' advice regarding medication. The treatment providers shall notify the practice supervisor and the disciplinary administrator in the event that the respondent discontinues treatment against the recommendation of the counselor during the probationary period. The respondent shall provide the treatment providers with appropriate releases of information to allow the treatment providers to provide such information to the practice supervisor and the disciplinary administrator.

j.      *KALAP Agreement*. The respondent shall continue to comply with the monitoring agreement entered into with KALAP. The respondent shall meet with his KALAP monitor as detailed in the agreement. The respondent shall attend the KALAP resiliency group throughout the period of probation.

k.      *Continued Cooperation*. The respondent shall continue to cooperate with the disciplinary administrator. If the disciplinary administrator requests any additional information, the respondent shall timely provide such information.

l.      *Additional Violations*. The respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the respondent shall immediately report such violation to the practice supervisor and the disciplinary administrator, as required by Kan. Sup. Ct. R. 211(g). The disciplinary administrator shall take immediate action directing the respondent to show cause why the probation should not be revoked.

15

"43.     The hearing panel recommends that the costs be assessed against the respondent in an amount to be certified by the disciplinary administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline that should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2017 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the amended formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. Consistent with his admissions in his answer and the Joint Stipulation, the respondent did not file exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2017 Kan. S. Ct. R. 255). Furthermore, the evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.2(c) (2017 Kan. S. Ct. R. 288) (scope of representation); 1.3 (2017 Kan. S. Ct. R. 290) (diligence); 1.4(a) (2017 Kan. S. Ct. R. 291) (communication); 1.16(d) (2017 Kan. S. Ct. R. 331) (termination of representation); and 3.2 (2017 Kan. S. Ct. R. 341) (expediting litigation), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

16

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, at which the respondent appeared, the office of the Disciplinary Administrator recommended that respondent be placed on probation subject to the terms and conditions of the proposed probation plan for a period of 18 months to 2 years. The respondent requested that he be allowed to continue to practice law, subject to the terms and conditions in the proposed plan of probation; he also acknowledged that a period of suspension might be required. The hearing panel recommended that respondent be suspended from the practice of law for a period of two years, that the imposition of the suspension be suspended, and that respondent be placed on probation for a period of three years subject to the terms and conditions listed in paragraph 42, subparagraphs a-l, in the final hearing report.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator and the respondent both recommended that respondent be suspended for two years and that imposition of the suspension be stayed for three years pending respondent's successful service of probation governed by the terms and conditions set forth in the final hearing report. A majority of the court agrees with that recommendation. A minority of the court would impose a harsher sanction, including some period of immediate suspension.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Matthew B. Works be and is hereby disciplined by suspension for two years, stayed for three years pending respondent's successful service of probation governed by the terms and conditions set forth, in the final hearing report, in accordance with Supreme Court Rule 203(a)(2), (a)(5) (2017 Kan. S. Ct. R. 234) and Supreme Court Rule 211(g) (2017 Kan. S. Ct. R. 251).

17

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

LUCKERT and ROSEN, JJ., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

JOHN J. KISNER, JR., District Judge, assigned.[2]

---

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 117,607 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2] **REPORTER'S NOTE:** District Judge Kisner was appointed to hear case No. 117,607 vice Justice Rosen under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.